IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

WILLIAM DILLARD TAYLOR                                                    PETITIONER
ADC #070160

V.                                        NO. 5:02CV00247 JWC

LARRY NORRIS, Director,                                                   RESPONDENT
Arkansas Department of Correction

MEMORANDUM OPINION AND ORDER

William Dillard Taylor, an Arkansas Department of Correction inmate, brings this

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (docket entry #1).  Because

Petitioner's claims are procedurally barred or without merit, the petition must be dismissed.

Background

Following a jury trial in April 1997 in the Circuit Court of Crawford County, Arkansas,

Petitioner was convicted of raping his daughter.  He was sentenced to a term of life

imprisonment.  (R. 54-56.)[1]  In a direct appeal to the Arkansas Supreme Court, Petitioner

asserted that the trial court erred (1) in denying his motion for change of venue due to

pretrial publicity, (2) in refusing to strike juror Wagner for cause, (3) in admitting evidence

of Petitioner's prior acts under Ark. R. Evid. 404(b), and (4) in denying Petitioner's motion

for mistrial based on remarks made by the prosecuting attorney in his opening statement.

(Resp't Ex. 1, attached to docket entry #6.)  His conviction was affirmed.  Taylor v. State,

974 S.W.2d 454 (Ark. 1998).

---

[1] All record references are to the record of Petitioner's state court proceedings, submitted as Resp't
Ex. 2 to docket entry #8.

Petitioner then filed a petition for post-conviction relief pursuant to Ark. R. Crim. P. 37, raising certain grounds not reasserted here.  His petition was denied, and the Arkansas Supreme Court affirmed.  <u>Taylor v. State</u>, No. CR 99-1471, 2001 WL 1081398 (Ark. Sup. Ct. Sept. 13, 2001).  There is no evidence or allegation that Petitioner sought any further post-conviction relief in state court.

Petitioner then filed this federal habeas petition, advancing the following claims:

     1.     He was denied due process and his Sixth Amendment right to a fair and impartial jury by the trial court's refusal to grant a change of venue due to massive and prejudicial pretrial publicity;

     2.     He was denied due process and his rights under the Fifth, Sixth and Fourteenth Amendments by the trial court's refusal to excuse juror Harry Wagner for cause;

     3.     He was denied due process and a fair trial by improper and prejudicial remarks made by the prosecution in its opening statement; and

     4.     He was denied due process and a fair trial by the state court's denial of his motion in limine and the introduction into evidence of so much "other crimes" evidence that it made up a majority of the state's case.

Respondent asserts (docket entry #6) that Grounds 1, 2 and 4 are procedurally defaulted because Petitioner failed to present the federal aspect of these claims to the state courts. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).  As to Ground 3, Respondent contends that this Court must defer to the state court's adverse adjudication on the merits of the claim pursuant to 28 U.S.C. § 2254(d).  Petitioner has replied (docket entry #10).

<u>Ground 1: Change of Venue</u>

In his first claim, Petitioner alleges that the state trial court's rejection of his motion for change of venue based on pretrial publicity denied him his rights to a fair trial and impartial jury as guaranteed by the United States Constitution.

A.    <u>Fair Presentation</u>.

Respondent first argues that this claim is procedurally barred from review because it was not argued or considered in a federal constitutional context in the state courts, but rather was presented only as a matter of state law.

Before seeking federal habeas corpus relief, a petitioner must first fairly present the substance of each claim to the appropriate state courts, thereby alerting the state courts to the federal nature of each claim. <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004). A habeas petitioner has fairly presented a claim when he has "properly raised the same factual grounds and legal theories in the state courts which he is attempting to raise in his federal habeas petition." <u>Palmer v. Clarke</u>, 408 F.3d 423, 430 (8th Cir. 2005) (internal citations and quotations omitted). To fairly present a federal claim to the state courts, the petitioner must have referred to "a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue" in a claim before the state courts. <u>Ford v. Norris</u>, 364 F.3d 916, 919 (8th Cir. 2004). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief ... by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" <u>Baldwin</u>, 541 U.S. at 32.

Here, in support of his claim that the trial court erred in denying his change-of-venue motion, Petitioner's appellate brief in the state court cited a number of Arkansas state cases, including <u>Ruiz & Denton v. State</u>, 582 S.W.2d 915 (Ark. 1979). (Resp't Ex. 1, pp. vii, 1-6.) <u>Ruiz</u> was an Arkansas Supreme Court case addressing whether denial of a change of venue violated a defendant's rights under both the United States and Arkansas

Constitutions.  Ruiz relied upon several United States Supreme Court cases addressing the federal constitutional principles implicated, including Irvin v. Dowd, 366 U.S. 717 (1961); Sheppard v. Maxwell, 384 U.S. 333 (1966); and Murphy v. Florida, 421 U.S. 794 (1975); as well as a federal habeas case, Bloeth v. Denno, 313 F.2d 364 (2d Cir. 1963). Petitioner's appellate brief quoted a portion of the Ruiz opinion discussing Irvin, and the quoted passage includes a citation to Irvin and Bloeth.  (Resp't Ex. 1, p.6.)

By explicitly relying upon the Ruiz case, which directly construes a federal constitutional claim, the Court believes that Petitioner has met the fair presentation requirement for his first claim.

B.      § 2254 Deferential Standard.

Alternatively, Respondent contends that the Arkansas Supreme Court's resolution of the issue is entitled to deference under the standards of 28 U.S.C. § 2254(d).

In the interests of finality and federalism, a federal habeas court is constrained by statute to exercise only a "limited and deferential review of underlying state court decisions." Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003).  Thus, where a state court has previously adjudicated a claim on the merits, a federal habeas court may grant habeas relief for the same claim in only three limited situations: where the state court adjudication (1) was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); **or** (2) "involved an unreasonable application" of clearly established federal law, id.; **or** (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2).

A state court decision is "contrary to" federal law under § 2254(d)(1) if it applies a rule that contradicts the controlling Supreme Court authority or if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a Supreme Court case, but nonetheless reaches a different result.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court's decision involves an "unreasonable application" of federal law under § 2254(d)(1) if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  The habeas court must "ask whether the state court's application of clearly established federal law was objectively unreasonable," and a state adjudication may not be found unreasonable "simply because [the federal habeas] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 409, 411.

   C.    Applicable Federal Law.

   The Sixth Amendment to the United States Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a ... trial, by an impartial jury."  When pretrial publicity is at issue, a reviewing court engages in a two-tiered analysis to determine if the constitutional right to an impartial jury has been compromised.  Pruett v. Norris, 153 F.3d 579, 584-88 (8th Cir. 1998).  The first question is whether the publicity "was so extensive and corrupting that a reviewing court is required to 'presume unfairness of constitutional magnitude.'"  Id. at 585 (quoting Dobbert v. Florida, 432 U.S. 282, 303 (1977)).  The presumption of inherent prejudice is "rarely applicable, being reserved for

extreme situations" where the trial atmosphere has been "utterly corrupted by press coverage."  Pruett, 153 F.3d at 585 (quoting Murphy, 421 U.S. at 798).

Where the high threshold of proof for presumed prejudice has not been met, the court must turn to the "actual prejudice" inquiry and examine the totality of the circumstances to determine whether the accused was deprived of a fair and impartial jury by pretrial publicity.  Pruett, 153 F.3d at 587; see Dobbert, 432 U.S. at 303; Murphy, 421 U.S. at 799-800.  The Constitution does not require jurors to be ignorant of the facts and issues involved in a case; rather, the relevant question is whether an impaneled juror "can lay aside his impression or opinion and render a verdict based on the evidence presented in court."  Irvin, 366 U.S. at 722-23.

D.     State Court Proceedings.

On June 29, 1995, an information was filed in the Crawford County Circuit Court charging Petitioner with raping his daughter, who was under the age of fourteen, in 1991 and 1992.  (R. 2.)  At the time, police were also investigating him for possible involvement in two other cases in western Arkansas, the murder of Melissa Witt, a college student whose body was found in adjoining Franklin County in January 1995, and the disappearance of Morgan Nick, a seven-year-old girl who vanished from a ballpark in Crawford County in June 1995.  Petitioner failed to appear for his arraignment and was not apprehended until May 1996.  It is undisputed that, because of the possible connection to the unsolved Witt and Nick cases, there was significant media coverage of the charges against Petitioner, the police investigation and search for him, and his subsequent arrest.

6

Petitioner's trial was scheduled for April 10, 1997; three days before trial, he moved for a change of venue due to pretrial publicity, and a hearing was held.  (R. 30-42.)[2]  At the hearing, a Crawford County attorney testified that he had seen extensive newspaper and television coverage regarding Petitioner and that most of it was in regard to police questioning of Petitioner about the Nick and Witt cases.  He further stated that he believed that the jurors in Crawford County would try to give anyone a fair trial but that, in spite of their best efforts, he would be concerned that the thought would be in the back of their minds that Petitioner was the person who killed Witt or abducted Nick.  He admitted, however, that he had not visited with people in the community about the matter and did not know the "pulse" of the community.  (R. 69-75.)

Evidence was also introduced at the hearing of four newspaper articles in the *Southwest Times Record*, a daily Fort Smith (Sebastian County) newspaper, apparently in May and June 1996, and of three articles in the *Press-Argus-Courier*, a bi-weekly Crawford County newspaper, one in February 1996 and the others probably in late spring 1996.  (R. 77-88, 92-100.)  The articles stated that Petitioner had been "on the run" from law enforcement authorities, that he had been captured in Oklahoma, that police planned to question him about the Witt and Nick cases, and that he faced three felony rape warrants involving children between the ages of six and fourteen.  Some of the articles mentioned that the case was nationally televised on "America's Most Wanted."  One of the articles contained reactions from various family-members following his arrest.  Petitioner

---

[2]Petitioner had filed an earlier motion for change of venue, which the prosecutor agreed not to contest. However, due to a change in judicial districts, the case was reassigned to a different trial judge and different prosecutor.  The original motion was never heard or ruled upon.  Petitioner then filed a supplemental motion for change of venue, which is the motion at issue here.  (R. 42, 65-68.)

also introduced a "wanted" poster which appeared in Crawford County stores, which showed a picture of Petitioner and included a letter from an anonymous writer stating that Petitioner had sexually abused her and her sisters.  (R. 105.)

A *Southwest Times Record* reporter testified at the hearing that he did not live in Crawford County and had not visited extensively with Crawford County residents concerning their feelings about Petitioner.  He said it was his understanding that nothing had been written about Petitioner since July or August of 1996 because he was no longer a suspect in the Nick and Witt cases.  (R. 89-91.)  A *Press-Argus-Courier* reporter testified that he had not visited with people in the Crawford County community about Petitioner or his connection with these cases.  He said he did not recall any articles about Petitioner since the summer of 1996.  (R. 102-04.)

The trial court denied Petitioner's change-of-venue motion.  (R. 106.)  The Arkansas Supreme Court affirmed, first finding that Petitioner had failed to submit affidavits in support of his motion as required by Ark. Code Ann. § 16-88-204(a) and that the witnesses who testified were unable to show that they had a general knowledge as to the state of mind of the inhabitants of the whole county or that they were cognizant of prejudice existing throughout the county, as required by state law.  Taylor, 974 S.W.2d at 458.  This Court is bound by the Arkansas Supreme Court's determination that no violation of state law had been demonstrated.  It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

The Arkansas Supreme Court then stated:

In addition, there can be no error in the denial of a change of venue if an examination of the jury selection shows that an impartial jury was selected and that each juror stated he or she could give the defendant a fair trial and follow the instructions of the court. <u>Rankin v. State</u>, 948 S.W.2d 397 ([Ark.] 1997). The defendant is not entitled to jurors who were totally ignorant of the facts surrounding the case, as long as they can set aside any impression they have found and render a verdict solely on the evidence at trial. <u>Id.</u> In this case, none of the veniremen who were selected as jurors could remember anything about Mr. Taylor. Mr. Taylor concedes that the voir dire does not show that the jury was comprised of jurors who were "consciously biased" against him. In fact, of the twenty-four jurors who were voir dired, eighteen knew nothing about the case. Of the remaining six potential jurors, four had varying degrees of knowledge about the case and were excused. The other two potential jurors were not asked about their knowledge, and they were excused for other reasons.

In light of the testimony of the witnesses and the responses of the jurors, we hold that the Trial Court did not abuse its discretion in denying Mr. Taylor's motion.

<u>Taylor</u>, 974 S.W.2d at 458.

The question here is whether this ruling was contrary to or an unreasonable application of United States Supreme Court law under § 2254(d)(1).[3]

E.    <u>Analysis</u>.

Petitioner has not demonstrated that the standard articulated by the Arkansas Supreme Court contradicts any of the relevant federal law, nor has he identified any factually similar United States Supreme Court case reaching a different result. In fact, some of the language quoted by the Arkansas Supreme Court is virtually identical to the following passage from the United States Supreme Court's decision in <u>Irvin</u>:

It is not required, however, that the jurors be totally ignorant of the facts and issues involved. ... It is sufficient if the juror can lay aside his

---

[3]No contention is made that the claims raised in Grounds 1, 3 or 4 were based on an unreasonable determination of the facts under § 2254(d)(2).

impression or opinion and render a verdict based on the evidence presented
in court.

Irvin, 366 U.S. at 722-23.  The Arkansas Supreme Court's recitation of this standard in

Petitioner's direct appeal can be traced back to Irvin through the Arkansas cases.  See

Taylor, 974 S.W.2d at 458, citing Rankin, 948 S.W.2d at 406, citing Gardner v. State, 754

S.W.2d 518, 523 (Ark. 1988), citing Swindler v. State, 592 S.W.2d 91, 95 (Ark. 1979),

quoting Irvin, 366 U.S. at 722-23.  The legal standard applied by the Arkansas Supreme

Court, therefore, cannot be said to have been contrary to established United States

Supreme Court law under § 2254(d)(1).

Nor was there an unreasonable application of the governing law to the facts of

Petitioner's case.

First, the pretrial publicity in this case did not create a presumption of inherent

prejudice.  Although the media aggressively covered the case at times due to the Witt/Nick

connection, the bulk of the coverage occurred almost a year before trial and it was not so

inflammatory or pervasive as to presumptively create "a trial atmosphere that had been

utterly corrupted by press coverage."  Murphy, 421 U.S. at 798.  The circumstances here

come nowhere near those in the Supreme Court cases cited by Petitioner where

convictions were set aside due to excessive pretrial publicity.  See Irvin, supra ("barrage"

of publicity during six or seven months prior to trial concerning defendant's confession to

six murders and 24 burglaries; of 430 jurors examined during four-week voir dire, 268 were

excused for cause because of fixed opinions on defendant's guilt, and eight of the twelve

empaneled jurors were familiar with the facts involved and thought defendant was guilty

but said they could be impartial); Sheppard, supra ("massive and pervasive" newspaper

and television coverage before and during trial, coupled with "carnival atmosphere" at trial where press "took over practically the entire courtroom"; all but one of the selected jurors had read something about the case, and trial court did not adequately instruct them to not read or listen to press accounts of the trial); Rideau v. Louisiana, 373 U.S. 723 (1963) (defendant's twenty-minute confession had been broadcast in community three times before trial, and three impaneled jurors had seen the interview at least once).

Moreover, the trial court took precautions to assure the selection of an unbiased jury. At the beginning of voir dire, the trial court asked the jury panel if any of them knew anything about the case, and two prospective jurors stated that they had seen an article in the newspaper that morning. The court asked if what they had read would keep them from being fair and impartial, and the two jurors responded no. The court said that the attorneys would be permitted to inquire further on the issue, and he then advised all of the jurors that the case would be decided on the evidence presented in the courtroom and not on anything heard outside the courtroom. (R. 109-10). The trial court then excused one juror who knew a witness and one who was related to the prosecutor. (R. 111-13.)

The trial court permitted the attorneys to individually voir dire the remaining members of the jury panel. (R. 116.) Twenty-seven prospective jurors were called, four were excused or stricken for reasons unrelated to their knowledge of the case,[4] and the remaining twenty-three were specifically asked whether they had heard or read anything about the case or the defendant. Of those, sixteen reported that they had heard nothing

---

[4](R. 188 [Trentham], 205 [Basham], 206 [Cheyne], 232 [Stilly].)

whatsoever.[5]  The remaining seven had varying degrees of knowledge about the case. Only one said he already had a "feeling" about Petitioner's guilt, and he was excused by the court.[6]  Four others were stricken by the attorneys.[7]

Two of the jurors who reported some knowledge, Ms. Sweet and Mr. Harrall, were selected for the jury.  In response to questions by Petitioner's attorney, Ms. Sweet said she recalled hearing a few months earlier, when she was on a previous jury panel, that Petitioner was charged with failure to appear "or something," but that was all.  (R. 120, 124-25.)  Mr. Harrall said he remembered that the case had been in the paper "quite a bit" several years ago, but could not remember any details, had not formed any opinions, and could set aside any impressions he might have formed.  (R. 166-67, 169-70.)

Before excusing the impaneled jurors for the first day and before taking any evidence, the trial court admonished them not to read the newspapers, watch TV, or discuss the case, and told them that they would need to base their decision only on the evidence heard in the trial.  (R. 275.)  In its closing instructions following presentation of all the evidence the next day, the court again instructed the jury "to determine the facts from the evidence produced in this trial."  (R. 463.)

---

[5](R. 129, 132 [Hays]; 137 [Valentine]; 142 [Sandy]; 147 [Anderson]; 156 [Jones]; 162-63 [Koonce]; 195, 198 [Nielson]; 202 [Beals]; 209-10, 212 [Copher]; 216 [Honeycutt]; 224 [Russell]; 229 [Emery]; 233-34 [Mounce]; 248 [Wagner]; 261 [Parr].)  One of the sixteen, Ms. Bush, said she had seen an article in the paper that morning, which she did not read, but that up until then she had never heard anything about the case.  (R. 109-10, 243, 244-45.)

[6](R. 240-42 [Deffenbaugh].)

[7](R. 176, 178-81 [Herndon]; 183, 187-88 [Johnson]; 190-93 [Kizer]; 219, 222 [Hamilton].)  Only Mr. Herndon and Ms. Kizer mentioned the Morgan Nick connection.

12

This is simply not one of the rare and extreme cases where prejudice can be presumed. Only twenty-six percent of the prospective jurors (seven out of twenty-seven) reported any prior knowledge whatsoever and most of that was only vague recollections. Of the thirteen jurors actually seated (twelve, plus an alternate), all but two had never even heard of the case or of Petitioner. This is certainly no demonstration that the community was so inundated with press coverage so as to have corrupted the trial atmosphere or poisoned the jury pool.

Furthermore, under the second tier of the Supreme Court analysis, the record fails to demonstrate that the jury-selection process in this case created an inference of actual prejudice. As stated earlier, only two of the impaneled jurors stated that they had heard anything about the case and these were only vague recollections. Petitioner raised no objection to the seating of these two jurors. Nothing in the record suggests that any of the jurors were not answering openly and honestly. As he did in state court, Petitioner concedes that the voir dire does not show that the jury was comprised of jurors who were "openly and consciously biased" against him. See Taylor, 974 S.W.2d at 458. Instead, he says that, even though the impaneled jurors all stated that they knew nothing about the case or, if they did, that they had formed no opinions, those assurances could not be validly accepted due to the extent of the media coverage. This is essentially an invitation to presume prejudice, which is not justified under the circumstances for the reasons set forth above.

The Court cannot say that Petitioner's jury was tainted by either inherent or actual prejudice due to pretrial publicity, as defined in the United States Supreme Court precedents. Therefore, the Arkansas Supreme Court's rejection of Petitioner's change-of-

venue argument was not contrary to or an unreasonable application of the governing federal law.

Ground 1 must be dismissed as without merit.

Ground 2: Juror Wagner

Next, Petitioner contends that he was denied due process and his Sixth and Fourteenth Amendment rights by the trial court's refusal to excuse juror Wagner for cause due to his misunderstanding of the state's burden of proof.

A.     Fair Presentation; Procedural Default.

As with Ground 1, Respondent asserts that Petitioner failed to present the federal aspect of this claim in state court.  Petitioner says that, in his brief to the Arkansas Supreme Court, he cited a number of Arkansas cases which dealt not only with state law, but with the federal Sixth and Fourteenth Amendment rights to a fair and impartial jury.  In support of his claim regarding juror Wagner, Petitioner's state appellate brief cited only state cases.  (Resp't Ex. 1, pp. 7-10.)  He did not mention due process, label his claim as federal, or cite the United States Constitution or any federal cases.  Unlike the change-of-venue issue, he did not cite to any Arkansas state cases directly construing the Constitution or even discussing any federal issues regarding juror qualification. See Howell v. Mississippi, 125 S. Ct. 856, 858-59 (2005) ("[P]etitioner's daisy chain – which depends upon a case that was cited by one of the cases that was cited by one of the cases that petitioner cited – is too lengthy to meet this Court's standards for proper presentation of a federal claim.").  Therefore, no federal question was properly presented to the state courts regarding juror Wagner.

Where a federal habeas petitioner has failed to present his federal claims to the state courts so that the courts will be able to review their merits, a procedural default has occurred, and federal habeas review is permitted only if the petitioner can demonstrate (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice, that is, that a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. Coleman, 501 U.S. at 750; Murray v. Carrier, 477 U.S. 478, 496 (1986).

As cause, Petitioner asserts that his state post-conviction counsel was ineffective for failing to argue that trial counsel was ineffective for failing to specifically raise a federal due process challenge regarding juror Wagner.  Because there is no constitutional entitlement to counsel in state post-conviction proceedings, the alleged ineffectiveness of counsel in connection with such proceedings cannot constitute cause excusing a procedural default. Coleman, 501 U.S. at 752, 757; Taylor v. Bowersox, 329 F.3d 963, 971 n.13 (8th Cir. 2003), cert. denied, 541 U.S. 947 (2004).  In the Eighth Circuit, this principle applies even if the post-conviction proceeding is the first available state forum for raising a particular claim. Burns v. Gammon, 173 F.3d 1089, 1092 (8th Cir. 1999); Nave v. Delo, 62 F.3d 1024, 1034 (8th Cir. 1995); Krimmel v. Hopkins, 44 F.3d 704, 708 (8th Cir. 1995); Nolan v. Armontrout, 973 F.2d 615, 617 (8th Cir. 1992); Ford v. Lockhart, 861 F. Supp. 1447, 1452 (E.D. Ark. 1994); see Coleman, 501 U.S. at 755-56 (declining to reach this question).

Because no cause has been shown, the prejudice element need not be addressed. McCleskey v. Zant, 499 U.S. 467, 502 (1991).  Furthermore, Petitioner makes no attempt

to fit within the "fundamental miscarriage of justice" or "actual innocence" exception to the cause-prejudice requirement, nor does the narrow exception appear applicable.  See Schlup v. Delo, 513 U.S. 298, 324-31 (1995) (exception requires habeas petitioner to support his allegations of constitutional error with new reliable evidence not presented at trial, and to show, in light of the new evidence, "that it is more likely than not that 'no reasonable juror' would have convicted him").  Petitioner makes no assertion of innocence, nor does he present any evidence to that effect.

     B.     Merits Analysis.

Even if a federal claim is considered to have been fairly presented and not defaulted, Petitioner is entitled to no relief on this claim.  After Mr. Wagner stated that he thought the state's burden of proof in a criminal case should be by a preponderance of the evidence as it is in a civil case, rather than beyond a reasonable doubt, the trial court further explained the differing burdens and questioned him at length.  (R. 251-56.)  The court asked:

> THE COURT: Well, let me ask you this, and I don't want to belabor it – though you make every effort to follow the instructions of the Court, and the Court will tell you in this criminal case, that you've got to be convinced by the evidence beyond a reasonable doubt, and it's up to the state of Arkansas to furnish that evidence, and the defendant is now presumed to be innocent – would you follow those instructions conscientiously to the best of your ability, if selected to serve?

(R. 255.)  Mr. Wagner responded that he would.  Petitioner's attorney questioned Mr. Wagner further regarding his understanding of the state's burden of proof, then challenged him for cause.  (R. 256-58.)  The court said it was a matter of "semantics" and asked the juror how convinced he would have to be to convict.  The juror said, "Beyond a reasonable doubt."  (R. 258.)  The following exchange then occurred:

16

THE COURT: All right, I think that statement – I really, think he's trying to be [as] honest as he knows how; and quite honestly, the Court has some great difficulty in trying to delineate beyond the concepts when you start to measure them.  So, that's why I think he's being honest in saying he'd have to be convinced; and in a civil case, I think, he's saying he would also have to be convinced.

[DEFENSE ATTORNEY]: I understand.  I very much appreciate Mr. Wagner's honesty here, but I feel like his testimony remains that he has to be convinced in both cases the same amount; and I believe he's testifying as to a same degree of certainty in each case.  And inasmuch as the standard in criminal cases is much higher, we would renew our objection, and challenge him for cause.

[PROSECUTOR]: The true test is whether or not Mr. Wagner can follow instructions concerning the laws in the court, and sit and listen to all of the evidence, and [not] whether or not he has some preconceived notion about reasonable doubt.  The Court is going to instruct on what reasonable doubt is in this case, and the question should be whether or not he would follow the Court's instructions.

THE COURT: Will you follow the Court's instructions?

[JUROR WAGNER]: Yes.

THE COURT: I'm going to declare him a good juror.

(R. 258-59.)

A federal habeas court must presume any factual findings made by the state courts to be correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1). The question of whether a particular juror is qualified is "plainly one of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed. " Patton v. Yount, 467 U.S. 1025, 1036 (1984).  This is so because of the nature of the voir dire process, designed specifically to identify biased jurors, and because a trial court's ruling

on a motion to strike for cause is "essentially one of credibility, and therefore largely one of demeanor." Id. at 1038.  As explained by the Supreme Court:

> Demeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a potential juror is saying.  Any complicated voir dire calls upon lay persons to think and express themselves in unfamiliar terms, as a reading of any transcript of such a proceeding will reveal.  Demeanor, inflection, the flow of the questions and answers can make confused and conflicting utterances comprehensible.

Id. at 1038 n.14.

Here, the trial court carefully questioned juror Wagner, permitted Petitioner's attorney to further question him, and was able to observe the juror's demeanor while responding, including any hesitancy or indications of uncertainty or insincerity.  Ultimately, the juror expressed an understanding of the proper burden of proof and he swore to follow the trial court's instructions in that regard.  Petitioner presents nothing to rebut the state courts' determination that juror Wagner was qualified to sit as a juror, much less anything clear and convincing.  Therefore, the finding is presumed correct.  With that presumption, the Arkansas Supreme Court's affirmance of the trial court's refusal to strike the juror was not contrary to or an unreasonable application of any United States Supreme Court decision, nor was it based on an unreasonable determination of the facts in light of the state court record.

Ground 2 must be dismissed as procedurally barred or, alternatively, as without merit.

<u>Ground 4: "Other Crimes" Evidence</u>[8]

Petitioner alleges he was denied due process and a fair trial, in violation of the United States Constitution, by the denial of his pretrial motion in limine to preclude the introduction of evidence of other crimes and bad acts allegedly committed by Petitioner with several of his children and stepchildren.  (<u>See</u> R. 44-45.)  The state courts found that the evidence was admissible under Arkansas' so-called "pedophile exception" to Ark. R. Evid. 404(b), which permits "evidence of similar acts [of child abuse or incest] with the same or other children in the same household when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship." <u>Taylor</u>, 974 S.W.2d at 459-61 (quoting <u>Hernandez v. State</u>, 962 S.W.2d 756, 759 (Ark. 1998)).

A.      <u>Fair Presentation; Procedural Default</u>.

Respondent again contends that Petitioner failed to fairly present the federal constitutional dimensions of this claim to the state courts.  Petitioner says that, in his state court appellate brief, he argued that the pedophile exception to Ark. R. Evid. 404(b) should be reexamined as a matter of fundamental fairness, which was sufficient to give the Arkansas Supreme Court a fair opportunity to determine whether the exception violated due process.  Petitioner devoted eleven pages of his appellate brief to his "other crimes" argument, citing the Arkansas rules of evidence, eighteen Arkansas state cases, three cases from other states, and a treatise.  (Resp't Ex. 1, pp. 13-23.)  None of the cases addressed any federal issues regarding admission of this type of evidence or relied upon

---

[8]This claim is intentionally discussed out of order.

any United States Supreme Court decisions.  Petitioner's appellate brief never cited the United States Constitution, any federal constitutional provision, or any federal source.  In fact, he never even used the words "fundamental fairness," as he now asserts.

The federal aspect of this claim is, therefore, defaulted, and Petitioner has failed to demonstrate cause and prejudice, or actual innocence.

B.    Merits Analysis.

Disregarding the procedural default, this claim cannot entitle Petitioner to federal habeas relief.

The state trial court heard arguments on the issue at a pretrial hearing and said it was inclined to allow evidence of similar molestation instances but needed to know more about the particular testimony before determining if it was overly prejudicial.  (R. 59-65.) At trial, six witnesses, in addition to the victim, were allowed to testify that they had been sexually molested by Petitioner.  In addressing the claim on appeal, the Arkansas Supreme Court recognized that, under Ark. R. Evid. 404(b), evidence of a defendant's other crimes, wrongs or acts is inadmissible simply to show his propensity to commit the charged crime but that it may be admissible for other purposes.  Under Arkansas law, one such purpose is, in pedophile cases, to help prove "the depraved sexual instinct of the accused."  Taylor, 974 S.W.2d at 460.  In light of the existing Arkansas law, the Arkansas Supreme Court held that the trial court did not err in concluding that the probative value of the testimony at issue outweighed the danger of unfair prejudice under Ark. R. Evid. 403 because the evidence involved similar crimes against children who were in Petitioner's care or household at the time the incidents occurred.  Id.

A federal habeas court is prohibited from reviewing whether "other crimes" evidence was properly admitted by the state trial court pursuant to Ark. R. Evid. 404(b), which is simply a matter of state evidentiary law.  Sera v. Norris, 400 F.3d 538, 547 n.8 (8th Cir. 2005), pet. for cert. filed, No. 05-5725 (U.S. Aug. 8, 2005).  Instead, the admission of evidence at a state trial will form the basis for federal habeas relief only when the evidentiary ruling was "so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process."  Osborne v. Purkett, 411 F.3d 911, 917 (8th Cir. 2005).

The United States Supreme Court has "very narrowly" defined the category of infractions that violate the due process test of fundamental fairness.  Dowling v. United States, 493 U.S. 342, 352 (1990).  The Supreme Court has thus declined to hold that evidence of other crimes or wrongs is so extremely unfair that its admission violates fundamental conceptions of justice or the due process test.  Estelle, 502 U.S. at 75 & n.5 (stating that Supreme Court was expressing no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime); Spencer v. Texas, 385 U.S. 554, 563-64 (1967) (rejecting the argument that due process requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served).  See Bugh v. Mitchell, 329 F.3d 496, 512-13 (6th Cir.), cert. denied, 540 U.S. 930 (2003).  This is particularly true where the trial court has guarded against possible misuse of such evidence through limiting instructions to the jury.  Estelle, 502 U.S. at 75;  Dowling, 493 U.S. at 353.  See Francis v. Franklin, 471 U.S. 307, 325 n.9 (1985) (a "crucial assumption underlying our constitutional system of trial by jury" is "that jurors carefully follow instructions").

21

Thus, there is no clearly established Supreme Court precedent which holds that a state violates due process by admitting propensity evidence in the form of other bad acts evidence.  Furthermore, the fundamental fairness of Petitioner's trial was safeguarded by the court's utilization of Ark. R. Evid. 403's weighing analysis, the court's individual determinations on the admissibility of specific testimony upon objection, and its repeated instructions to the jury that Petitioner was on trial for only one offense and that the "other acts" evidence was  being admitted for the limited purposes available under Ark. R. Evid. 404(b).  (R. 269, 270-71, 279.)

Petitioner concedes that some of the testimony "might well have been admissible" under the pedophile exception to Ark. R. Evid. 404(b) but that the volume and lurid nature of the testimony "crossed the boundaries of due process."  Petitioner cites no authority for this proposition, and he thus has not demonstrated that it is based on a clearly established United States Supreme Court case.

Under these circumstances, the Arkansas Supreme Court's rejection of Petitioner's claim regarding "other crimes" evidence was not contrary to, or an unreasonable application of, any United States Supreme Court precedent under § 2254(d)(1).

Ground 4 must be dismissed as procedurally barred or, alternatively, as without merit.

<u>Ground 3: Prosecutor's Reference to Prior Acts</u>

In this claim, Petitioner, contends that his federal constitutional rights were violated by the prosecutor's references in his opening statement to anticipated testimony about Petitioner's prior sexual acts with his other children.  This claim was presented in his direct appeal, and rejected by the Arkansas Supreme Court, as follows:

Mr. Taylor argues that the Trial Court erred in denying his motion for mistrial based on the prosecuting attorney's reference, in the State's opening statement, to the testimony of Mr. Taylor's children and stepchildren. After the prosecuting attorney stated that Mr. Taylor was on trial for the charge of raping his daughter and that Mr. Taylor's children and stepchildren were going to testify that he molested them, he stated as follows:

> I think when you listen to all of this testimony and all the evidence today and tomorrow, there will be no doubt in your mind that William Dillard Taylor not only raped [the victim in this case] but he also raped and molested several of his other children.

At this point, Mr. Taylor objected and moved for a mistrial as follows: "We are here today on one specific charge and the prosecutor has just alleged that there were other wrongful acts that occurred." The Trial Court denied the motion and admonished the jury as follows:

> Ladies and gentlemen of the jury, it is true as defense counsel has stated that the defendant is charged with only one alleged violation. There are times when evidence of other crimes is admissible to show intent and any number of other things, but he is only charged with having violated the particular alleged violation in the information, and is not on trial for the other incidents that may be admitted for other purposes.

The Trial Court refused Mr. Taylor's request that it refer to the other incidents as "alleged" incidents, and then stated as follows to the jury:

> I want to clarify the statement I made earlier. The defendant is on trial for a specific violation as the prosecutor and the deputy prosecutor have indicated. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person or to show that he acted in conformity therewith. It may be admissible for other purposes. These purposes might be showing opportunity, intent, preparation, knowledge and absence of mistake. For any one of those instances, the State may well introduce evidence of those instances.

> Declaring a mistrial is a drastic remedy and proper only where the error is beyond repair and cannot be corrected by any curative relief. The trial court is in a better position to determine the effect of the remark on the jury. An admonition is the proper remedy where the assertion of prejudice is highly speculative.

> Mr. Taylor argues that the State improperly inferred that because he "did it before, he did it again this time." We hold that the admonishment

cured any prejudice resulting from the prosecuting attorney's statement. In addition, as we have discussed, the testimony of the children and stepchildren was admissible; thus, the prosecuting attorney was entitled to refer to it during his opening statement. <u>See Rank v. State</u>, 883 S.W.2d 843 ([Ark.] 1994) ("Where evidence is admissible, a party is entitled to refer to it during opening statement.")

<u>Taylor</u>, 974 S.W.2d at 461 (citations omitted).  (<u>See</u> R. 266-71.)

Prosecutorial misconduct warrants federal habeas relief only where it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).   Examining the totality of the circumstances, this Court cannot find that the prosecutor's comments in his opening statement rendered Petitioner's trial fundamentally unfair.  Upon objection by Petitioner's attorney to the prosecutor's remarks, the trial court immediately instructed the jury – twice – that Petitioner was on trial as to only one criminal charge.  (R. 269-71.)  In his opening statement, Petitioner's attorney directly addressed the prosecutor's statements regarding the alleged prior conduct and reminded the jury that they were there "on one specific instance – did William Dillard Taylor rape Betty Taylor?," which was their "sole determination" in the case.  (R. 272-73.)  Following the testimony of the various witnesses, Petitioner's counsel reiterated this in his closing argument, cautioning the jurors not to convict Petitioner based on the allegations of other instances and urging them to focus only on the charge regarding Betty Taylor.  (R. 484-94.)  He emphasized this several times, finally saying, "Ladies and gentlemen, one last time – and I hate to beat this over the head, but I want to make sure everyone understands – it is not whether any of the other children were sexually abused or mistreated or terrorized, or anything else, by their father and stepfather; the case is whether or not Betty was raped."  (R. 492.)

In light of the trial court's curative instructions and the Petitioner's vigorous efforts to rebut the inference suggested by the prosecutor's statements, Petitioner has not shown that his trial was rendered fundamentally unfair by the comments or by the trial judge's refusal to declare a mistrial.  Thus, the Arkansas Supreme Court's rejection of this claim was not contrary to, or an unreasonable application of,  clearly established Supreme Court law.

Ground 3 does not entitle Petitioner to relief.

## Conclusion

Petitioner's claims are procedurally barred or without merit.  This 28 U.S.C. § 2254 petition for writ of habeas corpus is, therefore, dismissed in its entirety, with prejudice.

IT IS SO ORDERED this 26th day of September, 2005.

_____
UNITED STATES MAGISTRATE JUDGE